Good morning, Your Honor. May it please the Court, David Cooper on behalf of the appellants M.R.G. and Matthew Gibbons. I'd like to reserve five minutes for rebuttal, if I can. The parties here agreed that if M.R.G. terminated the agreement or otherwise stopped selling tickets, then, quote, the parties agreeing that the damages to Eventbrite from the foregoing are difficult or impossible to ascertain, and that repayment of the sponsorship payments is a reasonable approximation of such damages and would be deemed liquidated damages. That's Section 7, page 516 of the excerpts of record. M.R.G. does not dispute that Eventbrite is entitled to this agreed-upon liquidated damages. This appeal concerns a challenge to the additional damages on top of those liquidated damages awarded against M.R.G. under the true-up provision of the agreement, Section 8. But nothing about the true-up provision suggests that the parties took the seemingly unprecedented and ultimately unlawful step to include additional damages on top of liquidated damages. Let me ask you a question. You kind of have an inconsistent argument. In your opening brief, you say that your breach ensured that the condition precedent for the true-up provision would never occur. But then on reply, you say that your breach ensured that that condition rely on a contractual interpretation that is so malleable and can be so contradictory. So I think our position is that Section 7 — I'm sorry, Section 8, the true-up provision, only applies at the end of the term, period. So then there's this question about under their interpretation, that is, if it does apply before the end of the term, would it apply only if we breached or not? And I think that is a complicated question. And the position that they have taken, and this is pages 30 and — So what about their argument that if you had — if you had terminated one day before the end of the term, you're saying the true-up provision would not apply? So if we had terminated one day before the end of the term, they'd have a choice. They could continue to perform for that one day and seek whatever remedy they have under the true-up provision. Or they can say, well, this is a breach right now, and we get the — No, I thought your argument is the true-up provision will not apply unless the term is concluded. Isn't that your position? Correct. That is our position. But my point is that — Isn't that unduly harsh, then? I mean, why should we accept an interpretation that results in such an unjust result? So I don't think it would be an unjust result, because the parties specified in the case of termination — in the case of a breach by MRG, what the liquidated damage would be. They said, it would be very tough to figure it out. So we're going to liquidate it, we're going to specify it, and that's what they did in Section 7. So it's not a question of it being harsh. The parties came to an agreement about what those damages would be if, in fact, there were a breach. But if I can, I'd like to begin with the simplest and most straightforward reason why there has to be vacator here, and it would not require this Court to get into these questions of contractual interpretation at all. And that is that the true-up provision is an unenforceable penalty because it does not account for costs. Eventbrite does not contest that if costs are unaccounted for, there's an unenforceable penalty here. And that's black-letter law. We cited the cases Lewis, George, Brandon, and Tibbs. It's well-established that you have to account for costs or it's an unenforceable penalty. It's also clear and undisputed on the face of — and based on the face of the agreement that the true-up provision itself does not account for costs. So if we were to agree with you that the true-up provision shouldn't apply, can we order remediator without providing the option of a new trial here? Why is vacator the only remedy that is permissible? So the reason why there doesn't have to be a new trial and there can be a deduction of the specific amount that we request, the $6,335,000, is because here we have basically two buckets of costs that the jury could award, the true-up provision and, let's say, everything else. I think that's the simplest way to think about it. For the everything else, it's completely agreed upon, completely— But the true-up provision says the remedies are cumulative in addition to all other available remedies. I know you want to put it in a bucket by itself, but that's not what the — that's contrary to the explicit language, isn't it? So I can explain what — I can explain why the cumulative provision doesn't apply. The cumulative provision doesn't apply because it's still the question of whether the true-up applies at all and whether or not it's enforceable. So if it did apply and were enforceable, then in theory you could add it to something if that was not a violation of law. But to get back to Judge Desai's question about why this Court, if in fact found the true-up provision unenforceable or otherwise inapplicable, is that you have two buckets of costs. You have the true-up provision, you have everything else. For the everything else, it's undisputed that the maximum possible, if they got everything in the everything else category, would be the $4,664,000. And those — that's because it's the return of very specific amounts of money. So there's no dispute at all. That's the maximum that could be in the other bucket, which means the absolute minimum for the true-up provision is the remainder, which is $6,335,000. Now, if — But can you explain exactly what makes up that amount, the $6 million? Yes. And how can we be sure that all of that comes only from the true-up provision? Sure. So the everything else category, the $4,664,000, we have $1,568,000 in replenishing advances, $3 million in sponsorship payments, $95,823 in refunds. Can you repeat those numbers, please? Sure. And they're on pages 8 to 10 of our opening brief, if — just because I know these are specific numbers. $1,568,842 in replenishing advances, $3 million in return of sponsorship payments, $95,823 in refunds. And again, Eventbrite does suggest that those numbers could be lower. That is, that the jury might not have awarded those sponsorship payments or might have deducted something from them. But we don't have to explore that possibility because we are accepting the absolute minimum possible of true-up damages. In other words, it's true that it is theoretically possible that the jury could believe that true-up damages were higher than what we're asking for here. But we are accepting that. We are accepting that it might be higher, and we're not asking for the higher amount. What we're asking for is the absolute minimum based on the record and based on what Eventbrite does not dispute. And so, to get back to — Is it your position that the true-up provision is not facially invalid as a penalty if you deduct costs? Is that your position? So, not facially invalid if you deduct costs. So, if the true-up provision were written such that it said you get this amount minus costs, then it wouldn't be facially invalid, putting aside for the moment this liquidated damage version of Section 7. So, let's put that aside for the moment. Just look at the true-up provision. So, it sounds like you're saying yes. So, no. As long as costs were deducted, it wouldn't be an invalid penalty. No. Two reasons — Why? Aren't they entitled to expectation damages? Why not? No. So, they are entitled to expectation damages, but Section 7 said what those expectation damages are in a liquidated damages provision. And as a matter of law, you're not entitled to more than what the parties agree to be the liquidated damages for expectation damages. And that's, for example, the Better Food case. There was expectation — Wait. But if the true-up provision is not a liquidated damages provision, then why shouldn't they get expectation damages, which would be the profit on the sales and not just the reimbursement of their sponsorship payments? So, the reason is because there is a separate — so, regardless of whether the true-up provision is a liquidated damages provision, there is unquestionably a liquidated damages provision. I know, but if the true-up provision is not a liquidated damages provision, then why can't Eventbrite get their expectation damages from the true-up provision, which should be in fairness beyond just reimbursement of their sponsorship payments, right? So, no. Because once — Why? So, two reasons. One, because once you get liquidated damages, you don't get expectation damages on top of that. And so, for example, in the Better Food case, there was actual damages of $35,000. But the party said in a liquidated damages provision, you get 50. And so they got 50. And that's precisely how it works here. Regardless of whatever you want to characterize Section 8 as, Section 7 unquestionably is a liquidated damages provision. That is where the party said it will be very difficult or impossible to quantify expectation damages, so you're going to get this amount. And they — and we're not disputing that they are entitled to get that amount. But you do not get that amount plus expectation damages. When there's a liquidated damages provision, you don't get it on top of it. But even putting that aside for the moment, there is an additional problem here, which is that I understand Your Honor's question that, well, what if we subtracted costs? But the — but the provision, the true provision, by its terms, on its face, unquestionably does not subtract costs. It says you get this amount of revenue, and this is Section 8, and I'll — I'll point you to the page. This is page 516. It defines the true payment as an amount equal to the amount Eventbrite would have received, not minus their costs. And so then the question, the only question becomes, can we save this provision which on its face does not account for costs and is therefore unenforceable? And California law is perfectly clear on this. You do not reform unenforceable penalty provisions. And to be clear, Eventbrite did not ask for this to be reformed. They did not ask the district court to rewrite it to make it lawful. They have not asked this Court to rewrite it to make it lawful. And because the provision itself does not deduct costs, it is on its face unenforceable as a matter of law. So because it's unenforceable as a matter of law, the only — the only question, the only real argument that Eventbrite makes is that the jury might have deducted costs. And there are two big problems with this. One, it does not matter what the jury did if the provision itself is unenforceable. If the provision is unenforceable, it cannot be rewritten to be saved to subtract costs. The second problem is that if we look at the record, there is no evidentiary basis, no instructional basis to believe that the jury actually did this. Can I look at your waiver argument? I'm looking at the transcript. Let's look at ER 70-72. So Mr. Moon, who I guess was representing MRG at that time, you know, does say at the beginning it's written one-sidedly, you need to deduct costs, you know, from Eventbrite's damages. The court issues a ruling. Then Mr. Moon says something like, I was objecting to that part as well because there is a liquidated damages provision right above it. It's incomprehensible and unclear. Then the court says, you know, well, your objection to that part as well is overruled, but your objection to the first part, which I thought was your big objection, which is that you were imposing different standards on us, is sustained. I'll take that intervening sentence out. So she takes that sentence out, and then there's no objection. So, I mean, I'm just being sympathetic to the district court here. You didn't object after the court made its ruling, and what was stated was really unclear. And so from district court perspective, how would you even know what your position is because there's no further objection? So why don't you go ahead. Sure. So first, at the very beginning of this, as Your Honor notes, there was an objection to that entire paragraph, and it was on two bases. One, that there's a liquidated damages provision. They shouldn't get the true up at all. The second being that unlike the deduction of costs if Eventbrite breached, there was no MRG was the breaching party. I understand that it probably would have been better if they then objected again after the judge made the ruling, but there is no requirement to sort of object twice in a conference. And so while I am sympathetic to the district court here, the fact remains that the objection was made, the court ruled, and it's true that the counsel did not repeat that objection again in response to that ruling, but I don't think that's a requirement in order to preserve an argument. But again, this instructional error isn't completely independent basis for vacator here. Regardless of the instruction, no matter what the instruction said, it's undisputed that this was raised for judgment as matter of law. It was raised in the pretrial conference. And so if, in fact, this provision is unenforceable, then vacator is required. And if there are no further questions, I'll reserve the remainder of my time. All right. You have two minutes and eight seconds. Thank you, Your Honors. May it please the court. Adam Cashman on behalf of the Applee Eventbrite Inc. I think that the court has correctly identified the issues as we see them in the case. They essentially boil down to three questions. Number one, whether Section 7 creates the exclusive remedy that would apply here to Eventbrite in a circumstance where MRG undisputedly materially breached the contract, as the jury found, by terminating it prematurely, ceasing to sell tickets onto the platform, and eventually breaching the exclusivity provision of the agreement, which would apply if the agreement were to be still in force following the termination, which it wasn't, by going and selling tickets on an alternative platform. The second question, I think, is if not, meaning if Eventbrite can look for its remedies outside of Section 7 to other parts of the contract, Section 8, the true-up provision, Section 1, the section that requires the return of amounts that had been previously provided and requires MRG to pay back to Eventbrite the amounts that Eventbrite had refunded to customers that came back to it when shows were canceled. You agree that Section 7 is the liquidated damages provision? We do agree that Section 7 is the liquidated damages. Why aren't you stuck with that? He's right. There is a case that says even if your loss is $36,000 and you agree to $50, that's all you get. That's the Better Food case, Judge Koh, and in that case that's distinguishable for several reasons. One, in the Better Foods case, the language of the liquidated damages provision said that it was the, quote, exclusive remedy. We don't have any such language here. In fact, what we have, as Your Honor observed, is the very next section, Section 8, when it describes the true-up provision, says these remedies are cumulative to all of the other remedies. And as I just mentioned a moment ago, even MRG isn't saying, they are not advancing. It says it's cumulative, but it doesn't say when it applies, does it? Well, it applies in a case where MRG fails to sell the minimum amount of tickets, which undisputedly occurred here. And so the third point that I just wanted to make was that even MRG, here today, is not making the point that Eventbrite's remedies are limited to Section 7 and Section 7 only. They concede that you have to go beyond Section 7 in order to get the 1.568 million from the prior advance and to find the basis for requiring the return of the amounts that were advanced by Eventbrite to customers when shows were canceled. And so even by its own terms, their argument doesn't apply here, Your Honor. So I wanted to just, so that's the second issue. And then, I guess that's the first issue. Wait, I'm sorry. Did you just say Section 7 doesn't apply? No, I apologize if Your Honor misunderstood. Oh, I missed it. Yeah, I apologize. I didn't, if that's what Your Honor heard, that's not what I was saying. Section 7 applies, Section 8 applies, Section 1 applies. They all apply because there's, you can think of it as a menu of damages. And this gets to the second issue, Your Honor, which is whether there's some sort of penalty or unlawful penalty in Section 7 that would be implicated by a failure on its face to require the deduction of costs. And on that score, Your Honor, obviously our position is that that does not invalidate the clause. That's what jury instructions exist, and in this case, we're given to instruct the jury that they were to afford Eventbrite the benefit of its bargain. Judge Ilsen gave the standard model. But if Section 8 was a liquidated damages provision, would it be invalid because it doesn't account for a penalty? Possibly, but that's not this case, Your Honor, because Section 8 is not a liquidated damages provision. No party so argued. The court did not find and doesn't purport to be a liquidated damages clause. So I'm not sure. It might, Your Honor, it's hypothetical. It's possible, but that's not this case. What we have here is a case where it says it's cumulative in addition to all other well, to Your Honor's point, I think even if there were an issue with Section 8, and even if there was a problem in as much as Section 8 doesn't say here are the specific types of costs that you must deduct, well, the Ridgely case and the Lake River case, they both say, well, the plaintiff is still entitled to its expectation damages, and that's where the benefit of the bargain instruction that the jury appropriately gave comes in, because it instructs the jury that event right is to be put into the position that it would have been in had all parties performed. And so now MRG is taking issue with that instruction, and Your Honor, Judge Koh, you were spot-on in pointing out the waiver to the jury instruction issue below, and I appreciate Your Honor's experience. This isn't just an academic issue. Judge Ilston spent a lot of time trying to get the instructions correct. MRG made certain objections to those instructions, but it didn't make others. Now it's here saying, well, those instructions were improper for a reason that it never provided to Judge Ilston below, and so we think that that's... Well, I mean, they did say it was a one-sided instruction because, you know, describing MRG's damages, it states that the jury has to deduct from the cost MRG would have incurred, and that language is nowhere in the parallel sentence about event rights damages. And that objection... So it did make the objection. Well, but that objection was the one that was sustained, Your Honor. So they did make an objection. Judge Ilston sustained it and removed the sentence, but then when it came to the part that they're challenging now, the only basis for the objection that was ever put on the record was that the jury shouldn't be shown so instructed because Section 7 is the liquidated damages provision, and it is essentially saying that's the exclusive remedy. It preempts all other remedies under the contract, and so you shouldn't be instructing the jury anything about event rights, revenues, or other parts of the contract at all, and Judge Ilston appropriately overruled that. And so that's where the waiver comes in. So let's say we think the true-up provision applies. It's not an invalid penalty on its face, but costs should have been deducted. So what's the right to reduce the cost? Well, Your Honor, I think on this point, two things. One, the jury was instructed that event rights should be put into the position that it would be had everybody performed. And MRG argued this to the jury. They said that this is, that that instruction regarding benefit of the bargain, which comes from the California model, and this is that, for Your Honor's reference, this is at 161 and 163 of the excerpts of the record. Here's what MRG told the jury about that instruction specifically. They said that is the rule for damages, and then they quoted it. And then over on page 163. But what if we just disagree with you that it was wrong not to deduct costs? Our position is not that it's, that, our position is that costs could not be deducted. Our position is that the jury, that the jury was appropriately instructed, and that when you look at the award that was actually rendered, that the most likely outcome was that costs were accounted for. But the jury was told to deduct costs from MRG's damages but not event rights, and we are to presume that jury followed the instructions. The jury was never instructed not to deduct event rights costs. The jury was instructed to put event right in the position that it would have been in had all parties performed, which is the appropriate instruction. And when MRG, it came time, when it came time for MRG to explain that instruction to the jury, what they said was that that's the rule for damages, and, and that event rights costs should be deducted. And that's at 163 of the record. And so if, my point is that if this is how MRG was characterizing that instruction in real time, that's the position that they advanced to the jury. That's what they argued. 163 is what, their closing argument? That's closing argument, Mr. Moon. And so, but I want to... They said costs should be deducted, but they didn't have the benefit of a jury instruction explicitly saying that. Well, what Mr. Moon was saying was that that instruction did provide for that type of deduction. That's our point, Your Honor. When they were characterizing and arguing that instruction to the jury, what they were saying was, this instruction requires you to back out the costs. And, and here's the thing. The costs, everybody agreed on this, and this is in their opening brief, I think at page 28. This was, there was evidence of this below. It's not disputed. The costs to Eventbrite of performance were de minimis aside from the sponsorship payment, the three million. That was the only cost of performance. The other costs were de minimis. And so the most likely outcome here, when you look at the math, is that the jury awarded, it's a little bit of a mental gymnastics, but the jury awarded the three million in the sponsorship payment and then backed it out. And that's how we get to the average per ticket value of $6.18, which is only just slightly higher than what the evidence at trial was regarding Eventbrite's pre-contractual projections of the average per ticket price. And we think that that fits perfectly with the evidence because the jury also heard about the general trend of MRG going into larger and larger venues, increasing ticket prices, inflationary pressures, and the like. And so that $6.18 is very close to the $5.75 that was estimated in the pre-contractual environment, and it takes account of that other evidence that was undisputed and is not at issue on this appeal. So let's say we don't agree with you that costs were deducted. New trial or remitted-er? Well, I think Eventbrite would be entitled to the $6.18, but I do want to stay with Your Honor on this point about costs being deducted or not, and I appreciate Your Honor's question, but obviously there is a great deal of deference given to the jury's verdict. The types of reverse engineering that MRG is trying to engage in now, with the benefit of hindsight, are disallowed under the Tucher case and the others. And that $6.18 per ticket and the amount that it yielded in the jury's verdict of $11 million is well within the range that the evidence supported at trial. And so while they may not like it now, we can't go Monday morning quarterbacking and trying to unpack and speculate about what the jury found. It's within the range, and it is supported by the evidence. So we do believe that the jury accounted for those costs as they were instructed, as Mr. Moon argued to them, and that the award is well supported in the evidence. But to Your Honor's question, if the court were to disagree, we believe that Eventbrite, under the Seventh Amendment, is entitled to the option of a new trial. Go ahead, Your Honor. One last question. You seem to argue on the waiver of the jury instruction objection that it was really MRG's burden to show the verdict was not supportable. But you would agree that it's actually your burden to prove harmless error, right? Well, no, Your Honor, because with all respect, we believe that that argument that they're raising now to the jury instructions has been very clearly waived. And because of that waiver, we believe that it's the plain error standard that would apply here, not harmless error. And under the plain error standard, and I believe it's the Skidmore case and the precedents that the court is well familiar with, they have the burden of showing that there was clear error, that it affected substantial rights, and that it was prejudicial. And we don't believe that they can show any of those things. With the court's permission, I just want to address a couple last points that counsel made in his opening presentation. It appears that MRG is taking the contract doesn't specify the specific costs that are to be deducted, that it is on its face an unlawful penalty. I just want to address that briefly. The reason that it doesn't, and the reason that it couldn't, is because that true-up provision in Section 8 could apply in the case of full performance as well. It's not limited to a circumstance of material breach, as the jury found. So in that circumstance, if it goes to term and they've just underperformed, there wouldn't be any basis for deducting costs, or there would be, it would also be difficult for Eventbrite to be forecasting all the types of costs that were to be deducted. That's what the jury instructions are for, and that's what Judge Olson correctly instructed. So I just wanted to address that. And in any event, the Ridgely case and the Lake River case both say, well, even if you have a problem with a clause like this, a minimum performance clause, then you just, the jury, they're still entitled to their actual damages, their expectation damages, which is what we believe the jury awarded here, based on the correct instructions that Judge Olson provided. All right, thank you. Thank you, Your Honor. All right, you have two minutes and eight seconds, seven seconds. Go ahead, please. Thank you, Your Honor. A couple quick points. First, Eventbrite does not cite any case ever allowing a party to receive additional damages on top of liquidated damages specified in an agreement. They try to distinguish better food as having an exclusivity provision. The court didn't rely on that. We also cite utility consumers that didn't have an exclusivity provision. The law is clear. When parties agree on liquidated damages, one side cannot get more. And the reason is very clear, which is that the big rule, the fundamental rule, is that you cannot get more than you would have gotten but for the breach. And when the parties attempt to estimate that, and Section 7 is unequivocally clear that that's what the parties were doing here, then you cannot get more damages on top of those agreed upon liquidated damages. That's as a matter of law, and that requires vacate over here, regardless of any of the issues of contractual interpretation. When you tell us about the remedy, if we think cost should have been deducted, is it remitted or new trial? And if it's remitted, do we leave interest to the district court? Sure. So I think, first, if the true provision can't be applied regardless of the cost issue, if this first argument is correct, that Section 7 governs entirely, then it's clear that it should be remitted or to the specific number with no retrial. Because then it's not a question of whether costs were given or not given. It's we know what the exact number is. Right. I guess the premise of my question was not that. Understood. Yeah. And you got 40 seconds. So if you could answer my question, that would be a better use of your time. Understood, Your Honor. So if it's just a matter of the cost issue, then I think there should be remitted for a few reasons and not a new trial for a few reasons. First, on its face, the provision does not have deduction of costs, and therefore, this Court and the jury could not reform it to create it. Second, there was no evidence of what the cost would be. The only evidence was, in fact, that they would lose money on this deal. And so we cannot presume that the jury actually included costs, especially when the instruction was very clear, you deduct costs for us, but not for them. But the last point is that even if that were not true, they got their bite at the apple. And what they did, and I call this Court's attention to this is page 131 of the excerpts of record. They said to the jury specifically, you do not get to deduct costs, because the judge's instruction Your time has expired. Thank you. Thank you, Your Honor. Thank you very much. All right, we are adjourned. All rise. This Court for this session stands adjourned.
judges: GOULD, KOH, DESAI